FILED

September 20, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 1:26 PM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT MEMPHIS

Diana Gray,
      Employee,

v.

Daffy Duck Learning Akademy,
      Uninsured Employer.

Docket No.: 2015-08-0461

State File No.: 79466-2015

Judge Jim Umsted

## EXPEDITED HEARING ORDER FOR MEDICAL AND TEMPORARY DISABILITY BENEFITS

This case came before the undersigned Workers' Compensation Judge on September 14, 2016, upon the Request for Expedited Hearing filed by the employee, Diana Gray, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The central legal issue is whether Daffy Duck Learning Akademy (DDLA), must provide medical and temporary disability benefits for Ms. Gray's alleged work-related foot injury. For the reasons set forth below, the Court finds Ms. Gray is entitled to medical treatment for her foot as well as temporary disability benefits.[1]

### History of Claim

Ms. Gray is a thirty-six-year-old resident of Shelby County, Tennessee. She worked as the Assistant Director for DDLA, a sole proprietorship. On August 14, 2015, she injured her left foot at work when a can fell on it. She immediately called Ms. Daphene Booker, owner of DDLA, and reported her injury. Both Ms. Booker and her husband, Todd Harris, came to DDLA to check on Ms. Gray's condition, with Mr. Harris arriving first. They observed Ms. Gray's foot injury and called Ms. Gray's husband, Anthony Parker. Mr. Parker came to DDLA and took Ms. Gray to the emergency room at Methodist South Hospital (MSH).

According to the medical records at MSH, Ms. Gray complained of left foot pain due to a can falling on top of her toes. The emergency department diagnosed a foot contusion and found no fracture with x-ray. MSH reported Ms. Gray could return to work on August 18, 2016, with no restrictions. The parties disputed when Ms. Gray

---

[1] A complete listing of the technical record and exhibits is attached to this Order as an appendix.

returned to work, but Ms. Booker and Mr. Harris both testified she returned to work on August 18, 2016, and worked regular duty until September 4, 2015, when she left work to go to Ognibene Clinic because of continued foot pain. Ms. Booker confirmed she suggested that Ms. Gray go to Ognibene Clinic because Dr. Frank Ognibene is a foot specialist. DDLA offered no panel of physicians.

On the initial visit to Dr. Ognibene, Ms. Gray reported she injured her left great toe at work when a can fell on her foot. Dr. Ognibene diagnosed a non-displaced fracture and reported surgery was not necessary. He conservatively treated Ms. Gray for the toe fracture from September 4, 2015, to November 4, 2015. During this time, he assigned non-weight bearing, light duty work. Ms. Gray testified DDLA told her it did not have light duty work available. Dr. Ognibene also treated Ms. Gray for a fungal foot infection and toe-nail removal, none of which was shown to be work related.

DDLA admitted it did not carry workers' compensation insurance at the time of Ms. Gray's injury. It argued Ms. Gray violated company safety rules by wearing open toe shoes at the time of injury. However, it submitted no evidence that this rule was in effect, or that it was enforced. DDLA also argued not all of Dr. Ognibene's treatment related to a fractured toe.

Ms. Gray testified she has not seen a physician for her injury since Dr. Ognibene released her. She testified her husband's insurance paid part of her medical bills, and she owes the balance. Ms. Gray did not return to work because the staff at DDLA criticized her on Facebook and she did not feel comfortable working with them again. Ms. Gray asked for additional medical care because her foot is still hurting. DDLA argued it had no responsibility for Facebook posts by staff members.

### Findings of Fact and Conclusions of Law

*General Legal Principles*

At an Expedited Hearing, Ms. Gray need not prove every element of her claim by a preponderance of the evidence in order to recover temporary disability and/or medical benefits. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, she must come forward with sufficient evidence from which this Court might determine she is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2015). This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

2

*Compensability*

The first issue this Court must address is whether Ms. Gray sustained a compensable injury. To be compensable under the Workers' Compensation Law, an injury must arise primarily out of and occur in the course and scope of the employment; be caused by an incident or specific set of incidents; and be identifiable by time and place of occurrence. Tenn. Code Ann. § 50-6-102(14) (2015). Medical evidence is generally required in order to establish a causal relationship, "[e]xcept in the most obvious, simple and routine cases." *Cloyd v. Hartco Flooring Co.,* 274 S.W.3d 638, 643 (Tenn. 2008) (quoting *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 676 (Tenn. 1991)).

Ms. Gray credibly testified she injured the great toe on her left foot on August 14, 2015, when a can fell and hit her foot at work. The medical records confirmed this. DDLA did not dispute Ms. Gray's description of the work incident. Applying the above legal principles, the Court holds that Ms. Gray has come forward with sufficient evidence showing she is likely to prevail on the issue of compensability at a hearing on the merits.

*Medical Benefits*

Pursuant to Tennessee Code Annotated section 50-6-204(a)(1)(A) (2015), "the employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter."

Having found Ms. Gray is likely to prevail on the issue of compensability at a hearing on the merits, the Court holds DDLA must provide medical treatment made reasonably necessary by the work-related accident. The Court holds the treatment at MSH to be reasonable and necessary. The Court also holds the treatment by Dr. Ognibene for the fracture reasonably necessary. However, the Court holds finds no evidence connecting Dr. Ognibene's treatment for Ms. Gray's fungal infection or nail removal to her work injury.

Furthermore, the Court holds Dr. Ognibene shall be deemed Ms. Gray's authorized treating physician. Ms. Gray complains her foot still hurts, and the Court holds she is entitled to a return visit for examination and, if necessary, treatment with Dr. Ognibene.

*Entitlement to Temporary Disability Benefits*

An injured worker is eligible for temporary disability benefits if: (1) the worker

3

became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability. *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978). Temporary disability benefits are terminated either by the ability to return to work or attainment of maximum recovery. *Id.*

The August 14, 2015 medical report from MSH indicated Ms. Gray could return to work on August 18, 2015, without restrictions. Dr. Ognibene assigned restricted duty work from September 4, 2015, to November 6, 2015. However, DDLA provided no light duty work. The parties introduced no other records indicating any medical restrictions from working.

The Court finds Ms. Gray was unable to work for *four days* from August 14, 2015, until August 18, 2015. The Court also finds she was unable to work full duty and could obtain no light-duty work due to her injury during the *sixty-three day* period from September 4, 2015, until November 6, 2015. Ms. Gray's request for temporary disability benefits after November 6, 2015, is not supported by the medical proof.

### Amount of Temporary Disability Benefits

Pursuant to Tennessee Code Annotated section 50-6-207(1)(A) (2015), "[for injuries] producing temporary total disability, [an injured employee is entitled to] sixty-six and two-thirds percent (66 2/3%) of the average weekly wages" during the period of disability. Also, according to Tennessee Code Annotated section 50-6-207(2)(B) (2015), "[i]n all cases of temporary partial disability . . . the compensation shall be sixty-six and two-thirds percent (66 2/3%) of the difference between the average weekly wage of the worker at the time of the injury and the wage the worker is able to earn in the worker's partially disabled condition." Because Ms. Gray had no earnings during the period of disability, temporary total disability benefits and temporary partial disability benefits are equivalent.

The Court determines Ms. Gray is entitled to temporary disability benefits for the sixty-seven day period previously described. The parties agree her average weekly wage (AWW) is $450.00, thereby making her weekly compensation rate (CR) $300.00. Therefore, Ms. Gray is entitled to a combination of temporary total disability benefits and temporary partial disability benefits of $300.00 per week for a period of nine weeks and four days. This totals $2,871.42.

### Ms. Gray is eligible to apply for benefits pursuant to Tennessee Code Annotated section 50-6-801 et seq

Although this Court holds DDLA must provide Ms. Gray temporary disability and medical benefits, it is unclear whether payment will be forthcoming, as DDLA did not

4

have workers' compensation insurance at the time of the accident. Under Tennessee Code Annotated section 50-6-802(e)(1) (2015), however, the Bureau has discretion to pay limited temporary disability and medical benefits to employees who have established medical causation of their injury and meet the following criteria:

(1) The employee worked for an employer who failed to carry workers' compensation insurance;

(2) The employee suffered an injury primarily arising in the course and scope of employment after July 1, 2015;

(3) The employee was a Tennessee resident on the date of the injury; and

(4) The employee provided notice to the Bureau of the injury and the employer's failure to provide workers' compensation insurance no more than sixty days after the injury occurred.

Tenn. Code Ann. § 50-6-801(d)(1)-(4) (2015).

Here, Ms. Gray established that she broke her toe while working and underwent medical treatment for the broken toe. Her testimony and the medical records are sufficient to establish that a work-related incident occurred and that the incident resulted in Ms. Gray suffering a broken toe. Accordingly, the Court finds Ms. Gray is likely to prevail at a hearing on the merits in proving she suffered a compensable work-related injury.

The Court also finds Ms. Gray successfully established the remaining criteria. The Request for Investigation Report filed as Exhibit 10 with the Court established:

1. The existence of the employer/employee status;
2. Employer is uninsured;
3. Employer has ten employees and is subject to the act;
4. Employee suffered injury after July 1, 2015;
5. The injury was primarily within the course and scope of employment while employer was uninsured; and,
6. Employee was a Tennessee resident, and notice was given to the Bureau within sixty days of the injury.

The Court, therefore, holds Ms. Gray meets all the criteria to qualify as an eligible employee under Tennessee Code Annotated section 50-6-801 *et seq.*

**IT IS, THEREFORE, ORDERED** as follows:

5

1. DDLA shall provide Ms. Gray reasonably necessary medical treatment as recommended by her authorized treating physician, Dr. Ognibene, and as required by Tennessee Code Annotated section 50-6-204 (2015). This includes a return visit to Dr. Ognibene for examination and, if necessary, treatment made reasonably necessary by the work injury.

2. DDLA shall pay past medical bills incurred at MSH for emergency treatment, and shall also pay past medical bills incurred for treatment with Dr. Ognibene for treatment of the toe fracture. This does not include payment for treatment related to the toenail removal or treatment for the fungal infection.

3. DDLA shall provide Ms. Gray past temporary disability benefits for *four days* from August 14, 2015, until August 18, 2015, and *sixty-three days* from September 4, 2015, until November 6, 2015. The Court determines Ms. Gray is entitled to temporary disability benefits for this sixty-seven-day period. The AWW is $450.00, and the weekly CR is $300.00. Therefore, Ms. Gray is entitled to a combination of temporary total disability benefits and temporary partial disability benefits of $300.00 per week for a period of nine weeks and four days. This totals $2,871.42.

4. Ms. Gray is eligible to receive temporary disability and medical benefits from the Uninsured Employer's Fund pursuant to Tennessee Code Annotated section 50-6-801 *et seq.* The clerk shall forward a copy of this order to the Administrator for consideration of payment.

5. This matter is set for a Status Hearing on November 7, 2016, at 10:00 a.m. Central time.

6. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

7. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471.

**ENTERED this the 20th day of September, 2016.**

Judge Jim Umsted
Court of Workers' Compensation Claims

Status Conference:

A Status Conference has been set with **Judge Jim Umsted, Court of Workers' Compensation Claims. You must call 615-532-9550 or toll-free at 866-943-0014 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

7

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

<u>Exhibits:</u>
1. Ms. Gray's Affidavit
2. Statement of Ms. Moore (not admitted, marked for identification only)
3. Statement of Anthony Parker
4. Statement of Reverend J.E. Cooper
5. Text message between Employee and Ms. Booker
6. Photograph of Employee's shoe (not admitted, marked for identification only)
7. Collective exhibit of selected medical records from Methodist LeBonheur Healthcare (also including a complete set of these medical records marked as 7.B.)
8. Collective exhibit of medical records from Ognibene Clinics (also including a complete set of these medical records marked as 8.B.)
9. Collective exhibit of medical bills submitted by Employee
10. Collective exhibit of documentation related to the Uninsured Employer Fund's investigation
11. Collective exhibit-photographs of Ms. Gray's foot following her injury
12. Facebook statements of staff employees at DDLA (not admitted, marked for identification only)

<u>Technical record:</u>
1. Petition for Benefit Determination, filed October 6, 2015
2. Dispute Certification Notice, filed November 20, 2015
3. Request for Expedited Hearing, filed April 18, 2016
4. Employer's position statement

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on this the 20th day of September, 2016.

| Name | Certified Mail | Via Email | Service Sent To: |
|---|---|---|---|
| Diana Gray, Self-represented Employee | X | | 1923 Tacoma Avenue Memphis, TN 38116 |
| Daphene Booker, Owner, Daffy Duck Learning Akademy | X | X | daphenebooker@gmail.com 2343 Elvis Presley Blvd. Memphis, TN 38106 |

Penny Shrum, Clerk
Tennessee Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov